Paul M. BROPHY, Appellant,

v.

UNITED STATES of America, Appellee.

No. 14718.

United States Court of Appeals
Ninth Circuit.

Feb. 8, 1956.

Certiorari Denied May 7, 1956.

Kramer, Roche & Perry, Phoenix, Ariz., for appellant.

J. Lee Rankin, Asst. Atty. Gen., William H. Veeder, Sp. Asst. to Atty. Gen., Jack D. H. Hays, U. S. Atty., Robert S. Murlless, Asst. U. S. Atty., Phoenix, Ariz., for appellee.

Before DENMAN, Chief Judge, and POPE and LEMMON, Circuit Judges.

DENMAN, Chief Judge.

Brophy, an owner of land in the San Carlos Irrigation and Drainage District of Arizona (hereafter referred to as the San Carlos District), appeals from a decree of the United States District Court for the District of Arizona which ordered him to cease pumping water for irrigation purposes from a well on his land. Brophy contends that his right to pump water for such a purpose is controlled entirely by the Landowners' Agreement with the Secretary of the Interior signed in 1927 which brought his land into the San Carlos District and that the agreement allows him to pump his own water

for any purpose until ordered not to do so by the Secretary of the Interior.

The San Carlos Irrigation Project was created by Congress in 1916 primarily to make water available for the irrigation of 50,000 acres of Indian lands. To make the project feasible economically it was necessary to also bring in 50,000 acres of non-Indian land. The available surface water would irrigate only 80,000 acres, and so the original plans called for water for 20,000 acres to come from well and pumped water from underground sources. Congress passed an appropriation in 1928, 45 Stat. 200, to provide for a pumping and drainage system authorizing the development of an electric power plant at Coolidge Dam to supply power to operate such a system. Many wells and pumps have been put in operation in the San Carlos District since then. Under orders of the Secretary of the Interior the San Carlos Irrigation District Project Engineer each year allocates to each landowner the amount of water he may pump for irrigation purposes, deducting this amount from the landowner's share of stored water. If Brophy's construction of the contract is correct, he could pump very large quantities of water from the common pool under the lands beyond the allocated amount and by this unequal share to that extent diminish the waters to be used by the Indian lands. This appears contrary to the Congressional intent.

"* * * the Secretary of the Interior, * * * is hereby authorized to construct a dam across the Canyon of the Gila River near San Carlos, Arizona, as a part of the San Carlos irrigation project, * * * for the purpose, first, of providing water for the irrigation of lands allotted to Pima Indians on the Gila River Reservation, Arizona, now without an adequate supply of water and, second, for the irrigation of such other lands in public or private ownership, as in the opinion of the said Secretary, can be served with water impounded by said dam *with-*

*out diminishing the supply necessary for said Indian lands"*.[1]

Brophy relies on a provision of the Landowners' Agreement with the Secretary of the Interior which Brophy's predecessor in interest had executed in 1927. That provision is as follows:

"All underground * * * water under * * * the white lands embraced in the said San Carlos project, except such as may from time to time be needed and utilized by the owners of such lands for their domestic water supply, shall at all times be available to said project for development and use as an irrigation water supply for said project; and the undersigned promises and agrees, in respect to his land which shall be taken into said project, to give to the United States or said project the necessary rights of way for the use of such waters *and agrees further not to drill or operate wells in any other way or use or permit others to use said waters for irrigation contrary to any rules, orders, or regulations promulgated by the Secretary of the Interior with relation to said waters on said project.*" [Emphasis added.]

Brophy asks this court to construe this provision to read as follows:

The landowner "* * * agrees * * * not to drill or operate wells in any other way * * * contrary to any rules, orders, or regulations promulgated by the Secretary of the Interior * * *."

On the other hand, the San Carlos District asserts that the clause should be construed as follows:

The landowner "* * * agrees * * * not to [1] drill or operate wells in any other way or [2] use or permit others to use said waters for irrigation contrary to any rules, orders, or regulations promulgated by the Secretary of the Interior * *."

Under such a construction Brophy has agreed not to drill or operate the wells

---

1. 43 Stat. 475–476 (1924).

in any other way than for his domestic water supply and the amount for irrigation permitted by the Secretary's agent. There would be no necessity for an order to Brophy to stop operating his well for his irrigation purposes beyond the allowed amount.

We agree with the Government's construction. An earlier provision of the Landowners' Agreement states:

"All Indian and white lands which shall be in said San Carlos Project and under said Coolidge Reservoir shall be entitled *to share equally* in all of the stored and pumped water of said project in so far as that shall be physically feasible, and said lands shall share equally in all of the water of said project of every nature as long as the stored and unstored water supply for said project shall be sufficient for the project's needs, and as far as that shall be physically feasible;" [Emphasis added.]

Brophy's interpretation of the contract would violate its provision for equal sharing of the available water and the intent of Congress in enacting the underlying legislation to which we have above referred.

The judgment is affirmed.